Your Honors, this case is an example of a wrongful conviction resulting from the presentation of evidence that incurably tainted this trial, the testimony of Georgiana Cotton and the other references to her testimony that were never stricken or moved to be stricken from the record. Well, clearly, I mean, her testimony was stricken, and that was a suggestion of the judge that Mr. Thomassey made a motion, and the judge granted it. That's on page 346. The motion was for a mistrial. Well, initially for a mistrial, and then later on, the judge said, I would entertain a motion to strike the testimony of Ms. Cotton. Mr. Lenhardt opposed that, and then the judge granted it. Now that's just as to her testimony. That's phase one. On phase two is, what other testimony was there of the police officers that was not, in effect, procedurally defaulted, or anyone else that implicated Mr. Glenn in the murder? The only real testimony, independent of the Georgiana Cotton references, setting those to the side, was the testimony of Jerry Pratt. The Monty Blair evidence, that there was a vehicle stop in Wilkinsburg, where a gun was found and the occupant fled, only had meaning, and only had context, when juxtaposed to testimony of Jerry Pratt. Let's go back to Judge Ambrose's question, because I want to be sure that I understand the procedure, the basic procedural background here. Yes. The only relief that Mr. Glenn sought was a mistrial. Yes. Right? I mean, the determination by the trial judge to strike the testimony of Ms. Cotton was effectively a sua spontuum, wasn't it? Exactly, Your Honor. That is precisely correct. But because what Mr. Glenn wanted here was a mistrial, and he didn't receive it, doesn't this case really boil down to an attempt by Mr. Glenn to constitutionalize a determination by a state trial court judge that is otherwise subject to abuse of discretion review? And isn't that what this is all about? Second-guessing a trial judge's determination that, based on all he has heard and how he has read that jury, which is what good trial judges do, this case could go forward by striking the testimony and giving them a curative instruction. But I disagree, Your Honor. And well, I mean, with respect to what? That's accurately what happened, correct? It is what happened, but, I mean, look at, really, the reality here. The jury never heard Georgiana Cotton not only say that, well, I didn't see this. She said that somebody else did it. Oh, exculpatory testimony. The jury heard so many accounts from Ms. Cotton that there's no way her credibility would have stood up if she had attempted to tell them the precise date and was accurate about it. But that's the thing, though. In fact, defense counsel had an opportunity even, and did so, and did cross-examine her after the in-camera, where she had changed her account. So there was an opportunity on the part of the defense to dirty her up even more after that. Well, and actually also to be able to refer in that cross-examination to some of the testimony that was taken in-camera. Yes. And unfortunately, he failed to do so. The most salient points being that she identified others or another person as responsible for the killing, and the motive being that she wasn't naming that person because she was receiving drugs from Mr. Youngblood. But it didn't end there, okay? It was never raised initially in the PCRA proceedings. But the prosecutor, in effect, violated the court order striking the testimony, when in closing argument, he refers to the female witness as corroborating circumstance of Jerry Pratt's testimony. What precisely did he say during summation? We know there is a female witness who testified, and I interviewed her just a few days before. Fact corroboration. All this was fact corroboration of Jerry Pratt. And I would submit that on so many levels, it was improper. It wasn't, I'm sorry. It didn't violate any directive of the court, but it seems to me what occurred here was a failure on the part of the court and counsel, perhaps, to clean up a few, at least, details. And your position would be more than they were just details. That having not stricken more than just the testimony, having not addressed these specific references by police, for example, that the jury was still able to consider and perhaps draw inferences from that unstricken evidence. Precisely, Your Honor. And trial counsel even said that when he talked about there being too much information in the record to clean up. The unfortunate event, though, was that he never tried. He never moved to have the, that testimony stricken. He never asked for an instruction saying that the jury should not consider that evidence. Something. Isn't it possible that Ms. Cotton's testimony actually hurt the commonwealth rather than help it? I don't see how, Your Honor. I mean, it was presented as an eyewitness case. She testifies, and then she recants. She's portrayed as this. One of her accounts where she wasn't an eyewitness. But look at the buttressing that happened. The repeated reference to her being interviewed with the prosecutor to find out what was true. When she doesn't, when her testimony is stricken, the jury is left with the impression that, yeah, this girl who's a drunk and a crack addict and all this, these difficult things that she experienced in her life. You know, she was almost made to look like as a victim. You know, when you have a trial and there's testimony presented and it's just stricken, but the other instances when her testimony is referred to are not stricken or addressed by the court. What's the implicit message? The implicit message is that her testimony isn't completely incredible or something that should not be before the jury in any way. The implicit message is, well, cross-examination and the duress, the stress of the trial just broke her down. And this legal system is going to keep you from considering this testimony that was shifting and what have you, but it doesn't mean that the core allegation that she made in her direct testimony wasn't true. And I think that's what happened in this case. That's what the jury was left with. Ultimately, this case really is not about anything more than prejudice, right? I mean, let's put aside your first issue, your due process issue. Let's look at the other issues of evidentiary inclusion, pieces of evidence that you believe should have been kept out or at least warned against. Yes. What about stacking all of that up against the rest of the commonwealth sentences? What about the jailhouse snitch? But, I mean, look at Jerry Pratt, who he was. Well, the jury did. So did the trial court judge. And how about the girlfriend? Sharena Johnson? Yes. Her testimony did not inculpate Luther Glenn. It certainly gave rise to an inference that he was looking for an alibi that he didn't have, didn't it? I mean, that is a reasonable inference. Well, the testimony was essentially that Luther Glenn asked me for an alibi. I understand what the testimony is, but my question to you was, that's a reasonable inference that the jury could have, had it wanted to, drawn here and maybe did draw. I don't think so. The prosecution clearly tried to elicit that evidence from her. But she was pretty steadfast. Look, I can't say definitively that he was at my house at that precise moment. No, but she can say, he asked me to back me on an alibi. Yeah, yeah. She could say that, and she refused because of her recollection. That I didn't know that he necessarily had. Yeah, that her recollection was not definitively that he was there at that precise minute on the other side of Pittsburgh. Glenn trying to produce the phone records from the time that he was tried to corroborate that. And no one ever taking the testimony, subpoenaed him from the phone records. Speaking of corroboration. You've got to get close to the mic, make sure you say it. I apologize. Speaking of corroboration, I can see Pratt has lots of problems. But can it also not be argued that Pratt was ultimately corroborated when the fleeing car was stopped with a gun found in it. And of course, a pretty sophisticated weapon. But look at the time frame of this. Your Honor, Jerry Pratt gets out of jail on January 25th from 1998. He is- Why aren't you arguing, why isn't your argument here just one of credibility, Mr. Kogan? I mean, all of this evidence is evidence the jury had an opportunity to hear. And to hear it picked apart, and they still decided that at least some of it was believable and enough of it was believable to convict beyond a reasonable doubt, Mr. Glenn. If I may come back to the original question you asked. Yes, I'm sorry. January 25th, he is with Jerry Pratt and Monty Blair are in jail together at SCI Pittsburgh. January 25th, Monty Blair is released. January 26th, this incident happens. January 28th is the date that Luther Glenn and Jerry Pratt are in the holding cell. The incident happened before Pratt even says that he spoke with Glenn. That would have been public information that he would have been able to acquire independent that his friend, a guy that he knew from prison who just was released, was pursued in a vehicle stop. It should have been presented in that fashion and it should have stood on that basis alone that there was no corroboration. And look what Pratt tried to do. He tried to reference that, oh, you know, I'm telling you the truth because I'm upset about my friend. That testimony should never have been admitted in the life sentence that he got. I mean, he was corroborating himself throughout this. Oh, this guy is dirty, dirty, dirty. It's a sad truth of the nature of prosecution that members of the Chamber of Commerce rarely turn up as alibi witnesses for folks in criminal prosecutions. But his testimony, I mean, when you lie about who you are. Let me take you back to the first issue, though. This was actually a pretty careful common police court judge at trial, wasn't he? I mean, when you look at what happened to the Ms. Cotton's testimony. Eric, I want you to have five more minutes, please. I mean, I've seen the Ms. Cotton's in this world, both as a prosecutor and a common police court judge myself. I mean, you just want to slither under your table when your witness runs from you like that. It's the worst thing that can happen and there's no allegation here of any prosecutorial misconduct, no suggestion that the prosecutor did anything. If anything, the prosecutor made clear on the record, you know, you do what you want to do, judge. I mean, there wasn't a strong objection to a mistrial, as I recall here. What I'm getting to is that toward the end of the day, correct me if I'm wrong, the judge had a motion and he thought about it and he told the prosecutor, look, you go home for the night and think about what you want to do here. Isn't that how this happened? He told the prosecutor, said, I'm going to go polygraph Ms. Cotton and see what comes of it. And then that was never produced as to what the results were. I understand. I'm not talking about what the prosecutor did. I'm talking about what the judge did here. The judge took his time. He didn't pull the plug quickly and he didn't quickly decide that Cotton's testimony is going to stay in. I think that was more, well, he did not rule on the issue immediately. And then it was thought about. The prosecutor went to go back and sit down with Cotton. That was, I think, improper. It was, again, not raised as an issue, but she is still a sitting witness at that point. They come back the next morning and the judge says, I would entertain a motion to strike her testimony. Mr. Thomassey immediately makes that motion, indicating that he, in effect, agrees with it. Mr. Lenhart opposed it and the judge granted the motion. So now her testimony, there's a very explicit instruction to the jury, you ignore her testimony. So my question goes back to what other evidence was there that was admitted before the jury and that showed that Mr. Glenn was guilty? It was Jerry Pratt's testimony. I mean, that's all there was. There was the fact that he fled and there was an instruction given that flight could be inferred or evidence of guilt could be inferred from flight. But he was driving a stolen car, okay? He had independent reason. I don't think that he was guilty. What was the relationship of Mr. Glenn to the victim? None. There was none put into record. There was none. Your Honor, that's the thing. There was no evidence of motive. But there was evidence that Mr. Glenn was there earlier in the evening at the place where the homicide later took place, right? And that doesn't come in from Ms. Cotton. That comes in from somebody else. It comes in from Dwayne Youngblood, who said he was there earlier in the day. I don't remember the time frame. I think it was six to eight hours before. It was innocuous testimony. And it clearly did not come in to suggest that that time frame was the time of the shooting. But it's clear, an identification, that Glenn was there at this place earlier in the day. So these aren't two ships passing in the night. That's right. Right. But where is the evidence of any tie-in, any relationship between it to any evidence of motive, any physical evidence? It all came down to Jerry Pratt. I mean, if Jerry, that's what the case was. Again, the Monty Blair evidence only has- What was Glenn's primary defense? Glenn's primary defense was originally that Georgiana Cotton was lying, that this was, that she did not really witness it. And if you're a juror, and having read this testimony, I mean, it appears, I mean, your blink response is that we have no clue what she was saying. Because she said two different things. He did it, he didn't do it. She was told to say something. She then got, you know, she got immunity, and then she turned her story back around again. Who knew? So the judge had no choice but to strike her testimony. Okay. So what, so now he gets what he wants. Yeah. The jury, in effect, probably believes she's lying at some point. Or it doesn't make any difference because they're told to ignore all of her testimony. So what is his defense then? See, this is half the problem, Your Honor. The defense never realized the Monty Blair testimony was coming in. The defense actually made a motion at some point in the proceedings to disallow the Monty Blair evidence because of a discovery violation that he didn't know. The attorney for Luther Glenn represented Monty Blair, okay? And there was an issue that was raised that was not granted a certificate on that, you know, addresses that issue.  But Glenn was caught blindside. I mean, you know, they hear Georgiana Cotton testify. Then they hear her kind of go all over the place. Then they don't hear her say that it was actually somebody else or other people and that she was lying because of crack. The impression is that, you know, you had a good defense attorney that attacked her credibility, and this poor witness couldn't stand up to it, okay? And the trial court, whenever, you know, she's wavering, okay, we're going to strike her testimony. But it's in the back of their minds. How can they disregard it? I mean, this was a woman who said in very descriptive language about how he pulled up, had lettering on his jacket, pulled up out of the car in a blue station wagon, as I recall, and shot him from a few feet away. And then, you know, all of a sudden, no. And then you hear Jerry Pratt say, oh, yeah, you have to believe me because Luther Glenn talked about this female witness whose testimony wouldn't hold up in court. You have to believe me because, you know, Monty Blair was, you know, this stop was actually an assassination attempt. And that's what the prosecutor argued, that he was on his way to kill Georgiana Cotton. But he did have a gun, though, as Judge Smith pointed out. There was a gun found in, you mean Monty Blair's car? Yeah, there was a, he defended it on the case that there was a notorious criminal named Ronday Shelton who was actually convicted of numerous firearms offenses and had an almost identical, I'm talking about the trial of Monty Blair when he went to trial. He insisted that that was not his gun, but be that as it may, there was a gun found in the car. It was a vehicle stop that yielded a gun. As Judge Smith pointed out, can't the jury put that all together? We're pulling this thing, we're teasing it all apart, but, I mean, this is part of the body of evidence that the jury considered. But then why weren't they given the chance to, and that's what I'm arguing, that they should have heard, okay, if the Commonwealth wants to proceed with Monty Blair, the Monty Blair evidence and Jerry Pratt, fine, and let's try that case. But don't pollute it. I mean, how can you possibly expect the jury to forget about Georgiana Cotton? To grant the mistrial, it was at the defendant's motion. It would not have barred a retrial. It would not bar a retrial now. Now, granted, a lot more of Monty Blair and the- It also would not have barred the defense from coming in after the mistrial and raising a double jeopardy issue, suggesting some kind of prostitutorial complicity or knowledge and putting Ms. Cotton on the stand. And I return to the fact that, really, this was a very, very straightforward matter. The trial judge had only two options, really. And he considered them, and he even considered them overnight. And he determined that the better course was to strike the testimony rather than ending the trial and starting it all over again. But, Your Honor, I fear that he did that because, on some level, he believed Georgiana Cotton. And he even said that- Where in the record is there- Where in the record is there- And what did he believe? I read your record completely differently to suggest this was a fair-minded judge who wanted to do the right thing. I say that for this reason, Your Honor. When he is arguing with Glenn's attorney, and I believe it's even reproduced in my brief, and the attorney for Glenn is suggesting that this is- that she is just making this up. And the trial judge comes back at him. And it is reproduced in the exchange. If you'd like, I can get the page for you. Sure. Thank you. What page? If I could just have a moment. Page 13, 1213, 11, 10, 9. Yes. Yes, it is. Yes. I think she has confusion with respect to time frame. It's on 13. It's in Judge Zottola's remarks. It's in the- Yeah, but Mr. Thomassey said that he strongly disagreed with that. Yes, and the judge retorted back to him, I think that she's confused. And he said- and he got a strong response back from Mr. Thomassey there. Yes, absolutely, a very strong response. Put yourself in Mr. Thomassey's position here. He's at trial, and now the primary witness against his client, he has, through cross-examination, showed that she's all over the lot, so much so that he is willing- I would think, were I he, I would probably want her testimony to be stricken as opposed to a mistrial at some point. Because now the jury's saying, hmm, the state's primary witness has just been shattered in terms of the veracity of her testimony, and that should hang in their minds to help me possibly get a juror, at least a juror or two, to vote for an acquittal or to have a- and ultimately to have at least a hung jury. Your Honor, that is precisely the point. That's the critical point. The motion for a trial judge did not just kind of come up out of thin air. I mean, an attorney who displayed reluctance in his- they're not all reproduced in that section of my brief, but throughout the trial, when different events happened, he was reluctant to declare a mistrial. And he spoke very candidly- But Mr. Thomassey is then saying to himself, okay, if it's a mistrial and they come back, they've got time to regroup. It'll be without Cotton, but they've got time to regroup. Whereas I've got them on the ropes, I've destroyed the primary witness, let's strike her testimony, that's exactly what the judge suggested, that's what I go along with. I'm in- that seems to be a reasonable course of action. A retrial might actually not be without Cotton. They might clean her up. That's a good point. They've got- they've still- they've got a bunch of impeachment material to use the second time around. Yeah, she's been given immunity. But they may bring her back in a cleaned up style and she does better. That's a reasonable consideration for defense counsel to take into account. And I assume you would agree, because in the record we have, I don't think it makes this clear, but you're a Westmoreland County boy, you're right next to Allegheny County, so you know Allegheny County pretty well. Both the trial judge and Pat Thomassey are experienced guys. They are. You've got an experienced trial judge here and an experienced defense counsel. Yes. But I think that goes to show what happened here, Judge, that Thomassey was moved to move for the mistrial and not just rely on Cotton. I mean, that shows you- and he says it. I mean, he's very passionate in the way he describes it to the judge. Look, I need a mistrial. He asked for it three times before he made the motion to strike the testimony. And I don't recall that he brought up a mistrial motion at any time after he got the testimony of Ms. Cotton Strickland. Is that correct? I believe there was, but it was in conjunction with the prosecutor repeatedly bolstering the witnesses. And when he said, look, the prosecutor's imprimatur is on this case. I cannot get a fair trial. I renew my motion for a mistrial. That is in the record, Your Honor. I just- Was that after summations? No, it was before summations. It was in conjunction with the repeated instances of bolstering that occurred. All right, why don't you get- let's get your opposing counsel. Thank you. And then we'll get you back on the boat. Okay, Ms. Pettit. Yes, thank you, Your Honors. May it please the Court, Rasheed Pettit on behalf of the applee. First, I want to apologize. I was told to remain seated so that you guys could see me. So that's why I'm not standing to make my argument. No problem. The question is, what evidence was there besides the Cotton testimony, now stricken, that implicated Mr. Glenn in this murder? Your Honor, that actually gets right to the first point that I wanted to make. And building upon what you guys were asking about as far as, isn't this a case about prejudice? I think the biggest mischaracterization that Luther Glenn has been making is really rewriting what the function of habeas corpus is. He's wanting this Court to reassess all of the witnesses. That's a legal argument, and we'll get to that. What evidence was there besides Cotton's testimony that implicated him? Okay. There were several pieces of evidence, starting with the fact that a confidential informant contacted the police shortly after the murder and stated that Mr. Glenn was, in fact, involved with the shooting. What's the way? Moving on from there. No, wait a minute. A confidential informant said that? How is that evidence of anything in front of a trial jury? Well, I believe that that was testimony that came in through an officer, and I apologize. That's pure hearsay, right? Okay, yes. That was coming in through officer's testimony about their investigation. All right. So it explains why the officers were investigating something, but it's not substantive evidence of Mr. Glenn's culpability of anything. Right. Okay. What evidence was there at trial besides the now stricken testimony of Cotton that implicated Mr. Glenn as the murderer? Well, Mr. Glenn's confession, for lack of a better description, to Mr. Pratt. I understand, and this court has said, you know, Mr. Pratt was not a perfect, he's not, you know, the nun that you wish is driving by on a church bus. But he, in fact, testified, and he was cross-examined by Mr. Tabassi, and he gave a statement that not only did Mr. Glenn confess to his participation in the crime, but that he also said, Monty Blair is going to take out an eyewitness. And then, of course, we have the- Wait, wait, wait a minute. Even before you get to that, Blair said something else, too, didn't he? That in addition to Glenn stating that he had shot this person, that there was a woman who would testify against him with credibility problems. Yes, that is correct. So- And that- So doesn't, in terms of evidence, as Judge Ambrose was asking you, isn't that also evidence that the Commonwealth can muster if it is not explained in any other way how Mr. Blair would have known that, other than to have learned it through Mr. Glenn? That's exactly right. And I do want to also point out, I'm not sure what Mr. Kogan was referring to as far as the timeline, but Monty Blair's car chase, if you will, occurred on January 26th. However, he fled, and he was not apprehended until months later. Well, someone fled. I do want to- Someone fled from the car. And there was testimony from an officer, I'm sorry. No, that's what I was going to ask. Was there any evidence that, in fact, it was Blair who fled from that car? Yes, a police officer testified, Your Honor, and he identified Monty Blair as the individual who fled from the vehicle after the car crashed. So again, we have Jerry Pratt's evidence. And this court, with all due respect, in habeas corpus, we're not here to reassess Jerry Pratt's credibility. That was for the jury. And they made their finding. And the Superior Court of Pennsylvania and the appellate courts in the state have found that to be a fact in this case, that Mr. Glenn confessed to his participation to Jerry Pratt. We also have the fact that, I believe it was five days after the murder occurred, the police attempted to pull over Luther Glenn for a traffic violation, and he took off, consciousness of guilt. He led them on a high-chase pursuit for several miles. His car crashed. He also took off running, and he was later found hiding in some weeds. And then, of course, his passenger, Shareena Johnson, she signed a written statement stating, he has been calling me and writing me from prison, and he wants me to lie and give him an alibi at trial when I can't do that. And then, of course, at trial, she testified, I don't know if he was there. I can't say for sure. But her original signed statement to police was that he wasn't there. So at worst, he wasn't there at all. At best, she can't say. But regardless, he is trying to get a witness to lie for him in court. No, at least what the Commonwealth has is that Glenn is seeking an alibi for which the person he's seeking it from cannot say whether or not he's entitled to it. Right? Correct. I mean, that's not people with any weight, but it's very different in terms of how a jury could weight it from a man seeking an alibi that he knows he's not entitled to. That's right. This evidence was put in front of a jury, and they reached their decision. It's been upheld in the state courts. I don't see how Mr. Glenn has shown that there was a clearly contrary to or unreasonable application of federal law as determined by the U.S. Supreme Court in this case. He may disagree with the jury's decision. We could debate that, but he hasn't met his burden. Habeas corpus is a high standard. It gives high deference. Answering Judge Ambrose's question, is there any other evidence that we ought to be considering? Oh, I'm sorry. That would be... I believe that that would be a good summary of the evidence of Mr. Glenn's guilt. And then, of course, the fact that, building upon something else you guys were asking, the fact that our eyewitness fell apart, ultimately was struck from the record, that actually tainted our case. We've already asked Mr. Kogan about that. The question then becomes, if that is a taint on the case, and clearly, I think everyone agrees that Cotton's testimony was a major problem, you then have others testifying that, referring back to Cotton, you have the police saying that there was an array in which Cotton was asked to identify the possible shooter. Why should any other evidence have come in that even refers in any way to Cotton? Isn't it really ineffective to question a non-person? And why wasn't it ineffective to have sought to exclude that evidence or give a curative instruction? Okay, it does not rise to the level of ineffectiveness, Your Honors, because he does not prove that this was so prejudicial. Not that there's a conceivable or arguable prejudice here, but that there's a substantial likelihood that, in light of the other evidence- So are you conceding that you can't win on the performance prong of Strickland on that, but rather we have to jump to the prejudice prong? No, actually, Your Honor- I'm just trying to understand your argument. No, I'm not conceding that at all.  Sure. Defense counsel should not have made appropriate motions to exclude or have a curative instruction for that evidence. Well, first of all, I think there's an argument that that evidence was admissible on its own to get to the course of police conduct and the course of the investigation. Now, we have to remember- Were there any limiting instructions given to the jury to explain that that's the only reason that evidence was coming in? Your Honor, I can't say for certain off the top of my head, but I don't believe so. I don't believe so. But we also have to remember that testimony came in before Georgina Cotton testified, so it certainly was proper at that time. The fact that Mr. Tomasi, trial counsel, did not later move to strike that, I don't believe that that shows deficient performance. I don't think that that rises to the level that's necessary under Strickland to show that he performed efficiently. There's still an argument that it was admissible. And really, it was not referred to. The district attorney did not refer to that photo array in closing. It was sort of, you know- And again, if we're saying that Georgina Cotton's testimony was actually a hindrance to the Commonwealth, all of the references to Georgina Cotton were also a hindrance to the government's case. So no, I don't believe that it meets either prong of the Strickland test. What about the photo array? At least that's the one we're pretty sure was not procedurally defaulted. The admission of the photographs in the array that were compiled by the police and viewed by Ms. Cotton prior to Mr. Glenn's arrest. Did that come in beforehand or after her testimony? That came in beforehand. That came in before Georgina testified. And then again, it was not- What difference does it make when it came in as to the question of whether or not defense counsel should have made a motion to deal with that evidence in some way? What difference? Well, you know, I'm not so certain that it makes a difference to that specific question. But I think- I'm pretty sure it doesn't make any difference if it's there for the jury to consider one way or another. But I think the reason why that bodes mentioning, Your Honor, is because with all due respect, Mr. Glenn has throughout this case really tried to paint this as the government conspiracy against one Luther Glenn and has constantly been attacking, you know, everything from the police to the district attorney's office to the trial court to- Yeah, but that's irrelevant for here. The question is, this is a habeas, was there a 2254 D1 or D2 problem? So let's- Whatever he's claiming in regard to conspiracy is irrelevant. And let me just say, that's not how I read this case on appeal. It may have been argued that way in front of a jury. But if there was that kind of argument being made here, it would have been an argument that Ms. Cotton was put up on the stand and the Commonwealth knew exactly what they were doing and they did it intentionally. There's not even a whiff of that before us, anyway. Okay. Well, as you said, we're here to review the habeas claim. So we have to look at the state court record as it existed at that time. And when we look at that, to answer your question regarding the photo array, I do not believe that Attorney Tomasi's performance was deficient under Strickland. And I certainly think, as well as the state's appellate courts and the district court in this matter, found that there certainly didn't rise, he did not prove prejudice in that regard. On the due process argument that is noted at the latter part of the brief of your opposing counsel, he mentions that there was an instruction given to the jurors that you're to ignore Cotton's instruction that you were to consider all the evidence. And the point is, you can't have it both ways. Isn't there a chance the jury here was a bit confused? But we have no indication of that, Your Honor. I mean, Georgina Cotton's testimony was struck. And we obviously have a strong presumption that the jury followed that. When the judge is telling them to consider all the evidence, then that's also going to include all the other evidence of his guilt. Does it include all the other evidence, or is the tainted testimony going to bleed in to that? We don't know. We don't know. However, we have to go on the record. And there is no indication, there was not a question submitted during deliberations, for example, by the jury that would indicate that there was any confusion, that they were having trouble knowing what they should look at and what they shouldn't. If perhaps there had been a question submitted during deliberation that indicated they were still considering Georgina Cotton, or they were confused about something, perhaps then Mr. Glenn's argument would be stronger. But we, I mean, at this point, we're merely speculating. Oh, they may have been confused, or they may not have understood what to do. That's really, that's not enough under Haiti's review. What was the prosecution's reasoning as to why Mr. Glenn would want to kill the victim here? What was put in the trial as to what the reasons might be that he would wish to do so? I believe that there was some testimony regarding the fact that this was a known drug area. But I don't really believe that motive was ever something that was put forth by the government, or part of our, certainly not a key part of our case against Mr. Glenn. So you had, at one point, an eyewitness. The eyewitness's testimony is stricken. You have a confidential informant, and you have a Monty Blair. And plus the testimony as to referring back to Cotton, and most of that testimony came in before Cotton's testimony, is what you're saying? Yes. We have an admission of guilt through Jerry Pratt, Your Honor, not Monty Blair. Monty Blair was the individual that- Go ahead. Okay, sorry. I was just going to say, I was confused by, yeah, we have a confession of guilt to Jerry Pratt, and then also the implication that Monty Blair was going to take care of the government's eyewitness, and then that evidence that came in regarding Monty Blair. Yes. Thank you. We'll hear back from Mr. Kogan. Thank you. Thank you very much. Just briefly, Your Honor, with respect to the remaining testimony that the court elicited that could have supported the conclusion that the defendant, Luther Glenn, committed the murder, you can't draw any inference from the reference to the confidential informant. The legion of cases that I cited in part two, section two of my brief, explain that that is exactly why police background evidence should never be admitted. I mean- Was the police background evidence all before the testimony of Cotton? I'm sorry, can you say that again? Was the police background evidence at trial all submitted before the testimony of Cotton? Yes. Yes, it was, entirely. Were there any references during the summation by the prosecutor, Mr. Lenhart, to anything relating to Cotton? Yes, when he talks about the corroborating details of Jerry Pratt's testimony, he refers to her testifying. We know that there was a female witness who testified, and I interviewed her just a few days before. He's talking about interviewing, obviously, Cotton, fact corroborating- Obviously, Cotton. He doesn't mention my name. No, he doesn't say, but I mean, who else would it have been? I understand. To just draw the final conclusion, you asked about, or, pardon me, the prosecutor, the Commonwealth has put forward that, and I believe it was in response to your question about Monty Blair and the reference to the female witness, Monty, or, pardon me, to Jerry Pratt mentioning there was a female witness- That's all right. I wanted to keep calling him Monty Hall, so I- It's hard to get the name. You're revealing your age. Pratt tells the jury that Glenn confessed to him in the holding cell of the Allegheny County Jail. The day of the preliminary hearing, in effect, it was actually a coroner's inquest, and Georgiana Cotton testified at that, and her testimony broke down at that hearing. Okay? She was represented by a different attorney, and I think one could infer that word would have filtered down either through Glenn's counsel coming and talking to him in conjunction with what just happened at that coroner's inquest, or just the ... I mean, it's a holding cell, Your Honor. Again, you're talking about all these possible inferences, and we had a jury that decided this case. But you have that testimony in the record, at the coroner's inquest, where her testimony did break down. So Pratt's, oh, you know, Glenn said that there's a female witness who wouldn't hold up in court. Is that really ... You're going to hinge this case on that? That corroborating detail gives credibility? No, but it does, as jailhouse snitches go, add something to his testimony beyond just, hey, this guy told me he did the job. But again, look at how devious he was. I mean, he's bringing out before the jury that, oh, my friend died, and that's why I'm coming forward. That should not have been admitted. That's, that's, that's higher consistency. But before you sit down, I want to go back to something I asked you during your ... when we had you up the first time. I said that perhaps, I guess it's Mr. Tomasi, is that how you pronounce his name? Yes, Tomasi, yes. The defense counsel, that if you're in his position, let's forget prejudice for a moment, let's go to performance. If you're in his position, there's a very plausible argument that he should, now that he's got Cotton there, Cotton's testimony is, in effect, wiped away in front of the jurors, why wouldn't it be good performing for an adequate representation, maybe even better than adequate, for him to say, boy, I've got him on the ropes, let me continue with this trial, because if we go back on a mistrial, they're going to regroup. And I want to take a maximum advantage of this right here. Your Honor, because I think you have to trust his instincts. And he knew that the striking of her testimony was not enough. But his instinct changed later by, when the judge offered him the opportunity to strike her testimony, he immediately, on page 346, grasped it. In fact, when the judge offered him a strong, strong curative instruction, which is how Judge Zottola put it, and he accepted it right away. But then why the motion for the mistrial? No, the mistrial was after the motion. The subsequent motions for mistrial, because he knew that this thing was – Prior to page 346, there were three times he asked for a mistrial, because there was stuff being said. But then the judge gave him something else. Well, maybe I'll just strike the testimony. And he jumps on it. And there's a – I can't sit here and tell you that that was bad lawyering. But he did make the motion. I mean, that's what – No, he made the motion before. And the ineffectiveness claim is respect to the striking of the testimony. It does not relate to the mistrial. The mistrial is squarely before the court. No, no, no, I understand that. But it's basically, in his position, what he's saying is, okay, I may not get a mistrial. I may get something better than a mistrial. This woman testified all over the lot in front of these jurors. This woman's testimony in camera was repeated to her on cross. And she was caught in all kinds of inconsistencies. Now she's destroyed. I can go forward. They're going to have in the back of their minds that her testimony, their key witness, it can no longer help them. In fact, helps me. How is that a bad performance on his part to make that call? Well, because – I mean, again, the ineffectiveness goes to the motion to strike. Okay, the second – Understand, how is it – He made a call. The judge offered me this chance to strike her testimony. I'm going to make that motion. He made the motion. Why isn't it right for him – put yourself in his position. How is that bad performance? Again, Your Honor, maybe my recollection is different, but the motion for a mistrial was made. It was made three times before page 346. On page 346, as I recall, the judge offered him – this is the next morning. Remember, the judge had thought about it overnight. All people thought about it overnight. And then her testimony comes back. She testifies that next morning. I'm talking about after. That was when the judge says, hey, time out. I'll entertain a motion to strike. Tomasi immediately says, I'll do it. I'll make the motion. And then Lenhart opposes it, and the judge grants it. And then they – well, then they go – they adjourn for the day. Lenhart says, I have to regroup, see what I'm – whether I'm even going to proceed or not. That was the question. They were even going to go forward. The next morning, Cotton testifies again. Then she's all over the board. Tomasi doesn't bring out the exculpatory part of what she said. But the judge gives Tomasi exactly what he moved for, striking her testimony. No, no, he didn't. He moved to have the mistrial. Yes, he moved for the mistrial. Wait, wait. Okay, hang on. Time out, time out. Let's go to the transcript, if you're right. I believe it's at page 13. Give me the cite to the top of the page to the right. Could I have a moment? Sure. That's what I mean. Yeah. The judge suggested it. He does ask for a mistrial on page 351. Then we go to – he asked for a mistrial also on page 352.  And then asked for a mistrial on page 354. Judge says, I understand. We just can't let that – and then Tomasi says, we just can't let that case – this case at this point go to this jury. We just can't. Right. You've heard too much about the extraneous stuff. There's no way for me to fight that. No way. Judge, I understand. Then Mr. Lenhart comes in and said he has no objection to the entire transcript being placed before the jury so that they can determine themselves, in other words, including the in camera. They go back the next morning, 1145, they come back in. Judge Sotola says, I have given this matter some consideration. It is my intention not to grant a mistrial. I will give this jury a very strong cautionary instruction with respect to, one, not to consider the testimony that someone else – not consider any testimony other than the testimony from the witness. And also that they must consider and must listen to the fact that this witness said she did not see the shooting. I'm going to give them that instruction. Lenhart, I actually have a request that I think benefits the defense. The – Tomasi, we're not permitted to give that anymore. That's the law. Sotola, I'm giving some thought. I haven't decided based on her intoxication and based on where she was to strike all her testimony. I will consider a motion on that. Tomasi, I will make that motion right now. Sotola, all right, I'm going to strike her testimony. So after – I had my pages incorrect, but essentially the gist was after the motions for the mistrial, the judge suggested the possibility of striking the testimony and Tomasi immediately grabs that and goes forward. Well, it was in response to the judge offering that as a remedy. That doesn't mean he retracted or withdrew from his motion for a mistrial. He could have renewed his motion for a mistrial if he wanted to and he didn't. He went along with the judge's instruction. Well, but he was pretty vigilant and adamant and stressful in it when he originally made it. I don't concede that as a concession that he didn't want that as a remedy. I mean, the judge throws that at him as this is what I'm going to do. You know, I'm going to end with a cliché. It is what it is. I mean, that – Well, yes, of course. And so it's – at this point, is there anything – I'll give you one minute to sum up. Your Honor, this case was a travesty. The jury heard all of this testimony about Luther Glenn being guilty based upon what Georgiana Cotton saw and heard. The right thing to do would have been to declare the mistrial upon motion, okay, and to allow this thing to proceed in a cleaned up fashion where a jury was not presented with this dramatic, aggressive testimony naming him as the shooter and the insinuation being that, well, her testimony only broke down because of some intimidation. And that's really what it was. This case became an intimidation case. And it was allowed to proceed to verdict on that. And you can't allow her testimony to be before the jury in that kind of setting. That it was stricken, did not – I mean, if you look at year – Is there anything you want to add in addition to what you've said? I believe Luther Glenn to be an innocent man who was convicted in this case wrongfully, I believe the evidence strongly shows that. And I beg the court to consider this request for relief. This is not a typical habeas corpus case. This is not one that comes along all the time. But this one really does compel relief. Okay. Thank you very much. Thank you to both counsel. We'll take the matter under advisory. Thank you.